Good morning all. Our first case for argument this morning is the United States v. Faruki. Mr. Gable. May it please the court, counsel. My name is Andrew Gable and I'm the attorney for Belal Faruki. Mr. Faruki was convicted of six counts of wire fraud. Mr. Faruki was a computer tech who started his own hedge fund out of his home and he had a client, Mark Tishfield, who was disgruntled about the results of that investment. Mr. Tishfield was a portfolio manager of over 400 million dollars. He had worked for the Federal Reserve Bank of New York and worked in the financial industry for over 25 years. He was a highly sophisticated investor, knew that this was a risky investment, and this case only got to court because he lost money. At trial, the government failed to prove that Mr. Faruki committed wire fraud. I'll start off talking about counts 1, 2, and 3. In essence, keep in mind here, I'm reading your brief, you seem to, I thought I was reading a jury argument, frankly. At least for me, please show me where there's legally insufficient evidence as opposed to simply a disagreement between you and the government. In a nutshell, the government's case was that Mr. Faruki falsely said that he had five million dollars in other people's money invested. The government never proved that. All that they were able to prove is that Mr. Faruki did not have five million dollars in, I believe, three accounts. And from those three accounts, they extrapolated that to say that Mr. Faruki didn't have five million dollars in any other accounts. So there was not a disagreement about credibility or the evidence. It was the government's utter failure to show that Mr. Faruki did not have five million dollars in other people's money invested. Walk me through how does that, how does that amount to legally insufficient evidence on the charge? That the government alleged that Mr. Faruki lied about having five million dollars in other people's money, but they So all they presented was evidence about three bank accounts. They never looked at other bank accounts. There was nothing about anything from Fidelity or Schwab or TD Ameritrade. There was no forensic accountant that testified. What do you think the government had to do? I think they could have, they were able to get tax returns from the IRS. They could have gotten brokerage statements from other accounts. They could have had a forensic accountant look at the financials that they had. They could have had the FBI agent testify why he only looked at three accounts, and he could have testified also about why he chose not to look at other accounts. The lie about investing other wealthy person's money was not the only lie. There were many others. He lied about investing his own money to tremendous success. He lied about the trade station accounts. He lied about his college degree. He lied about a whole lot of things. It's not just a single lie. The other alleged lies about, he did invest his own money, I believe it was a hundred and fifty thousand. The government claims that he lied and said it was two hundred thousand or two hundred and fifty thousand, but the evidence was that Mr. Faruki did invest his own money, and the government didn't have any other evidence that Mr. Faruki didn't have money in other accounts. As for the lies about trade station and auditors and accountants, those were all statements of future intent. Mr. Faruki was very clear that this was a new fund, and in the PPM, the private place memorandum signed by the alleged victim, it laid out that there was no money in this fund, and this was a new fund going forward. So there was no place to trade, there was no reason to have a trade station account until there was money in that account. And I believe about the university, it was some vague testimony at trial that Mr. Faruki said he either went to BU or BC, and there was evidence that he didn't go to Boston University or Boston College, but there was no evidence that he didn't go to a different school in Boston, and there was no evidence that that really mattered to anyone. He didn't disclose the regulatory order against him from the state of Illinois. And with that, Your Honor, there was, first of all, there was, he had no duty to disclose that. You're arguing as if this were a civil case, counsel. Government doesn't have to prove duty to disclose a reliance in a criminal fraud case. But I think they have to show that there is some sort of intent to defraud by not disclosing that. I don't think that Mr. Faruki was under any kind of obligation to tell anyone about that, and secondly, he did tell the alleged victim in this, in the private placement memorandum, which the alleged victim signed before he sent in his money. So he was well aware that there was this ban, as well as the other civil actions against Mr. Faruki, before he sent in any of his money. Mr. Gabel, what about the statement by Mr. Faruki about having the five million real? With that, I believe that was one instant message. This case involved thousands and thousands of pages of instant messages and emails, and this was on a day where the market was going up and down and there were some large losses. And the alleged victim here was constantly asking Mr. Faruki questions. Why is this happening? Why is this happening? And I think that is more of just an expression of exasperation about it doesn't matter what the money went down. If it's five million real, if it's five million simulated, or 150,000 other money. And that was, in essence, that was the only evidence that the government was able to produce at trial. Do you want to save time for rebuttal? I mean, your time isn't, you're not into rebuttal time. If I just touch on a few other points then. As for counts four, five, and seven, after Mr. Tishfield sent his money to Faruki, Faruki's company, the money was then transferred to a bank account of the hedge fund, which then was transferred to the actual trading account. And so Mr. Faruki was convicted on two additional counts of just those later transfers of money. At that time, any alleged scheme was over, and counts four and five were therefore not illegal. How was the scheme over? Mr. Tishfield had already sent his money. It had reached fruition. And if Mr. Faruki had just taken the money out of the bank account. According to what theory of fraud does that conclude the scheme? As soon as Mr. Tishfield, once he was separated from his money permanently, I believe that then. Everything that comes after is irrelevant. Not everything that comes after is irrelevant, however. Everything done to perpetuate the scheme, to lull him into thinking that this is a real hedge fund when it was fictitious, none of that counts. But this, I don't believe this was an effort to lull anybody. This was an effort. Well that's the jury arguments again, as Judge Ripple pointed out. I just believe this was, this money was invested exactly as promised. And Mr. Faruki, if he would have just taken that money out of the bank account and spent it on anything, he would have faced lesser criminal liability than if he had invested the money exactly as he promised in the private placement memorandum. I'll touch briefly on the the trade station tapes, which were the false statements that Mr. Faruki made to the brokerage account. These lies on the trade station tapes were almost the exact same thing that the government alleged against Mr. Faruki. They were unable to prove Mr. Faruki actually made the false statements to Tishfield, so they were able to introduce the trade station tapes. That was highly prejudicial. Those trade station tapes had little, if any, relevance to the alleged scheme, and they were unduly prejudicial. What did they, what effect do you think they had on the jury? On the jury, that the jury heard Mr. Faruki's own words, making almost the exact same false statements that he was charged with. On those trade station tapes, he said he had five million dollars of other people's money, that he had fifty million dollars of this, and he was a successful trader. The jury never heard... So your argument is that they in effect gilded the lily, the government didn't need to introduce them? That they were unduly prejudicial, that they had nothing to do with the scheme. It was irrelevant whether what he was saying to trade station, it wasn't part of the scheme. The government's theory is that's how he set the case up, right? That's how he set the whole thing up. That it was the back end of the scheme, that he needed a trade station account to trade Mr. Tishfield's money. But in reality, the trade station tapes, he was going to be able to get the account, the false statements were just an attempt to get lower commissions. I believe the trade station people said that whatever you say doesn't really matter, it's the actual amount of money that you invest. Well right, but keeping trade station in the dark was part of the scheme, wasn't it? Or at least according to the government's theory, which the jury accepted? Possibly according to the government's theory, but keeping trade station in the dark did not, it was unnecessary for any scheme. The alleged scheme was that he lied, took the money, and put it in a risky investment. Trade station had little of anything to do with that. How so? It did matter if his, first his lies to trade station were irrelevant. He could have, if he would have said nothing to trade station, he'd be in the same situation. And it wasn't necessary to the scheme that he actually have a trade station account. He could have had an account anywhere else. Well it may be true that he could have taken the money and run and not done anything afterwards, but that doesn't mean that what happened afterwards was not part of the fraudulent scheme. The government's theory is that this was a fictitious hedge fund. He took the victim's money and, you know, went to trade station to try to get an account and try to build this fictitious hedge fund on false pretenses. So what happened after he had the money in hand is highly relevant to the overall fraudulent scheme here. With the trade station there was nothing fraudulent about that. The alleged fraud was that he lied about his investing history and all the money that he's making. It was irrelevant really what he did with the money and with trade station. He could have invested it with other brokerage accounts. Well trade station wasn't going to give him an account because of the ban, the regulatory ban, right? That was later on. There was an allegation that he didn't disclose that to trade station, but that wasn't what the trade station tapes were. The trade station tapes were Mr. Ferrucchi saying I'm a successful investor and I have five million dollars in this other account, which was in essence the same allegation, the criminal allegation, against Mr. Ferrucchi. So it sounds like part of the same fraud. The government's theory was the very back end of the scheme and even if it were part of that scheme, it is still unduly prejudicial because the statements were almost the exact same as the government's allegations against Mr. Ferrucchi. You're starting into rebuttal. I'll save any remaining time for rebuttal. Thank you. Mr. Abel. Mr. Mitchell. May it please the court, counsel. My name is John Mitchell and I represent the United States in this appeal. The government's evidence at trial overwhelmingly supported the jury's verdict because it showed that the defendant told multiple material intentional lies about his knowledge, experience, and book of business in an effort to obtain, trade, and retain more than a million dollars from victim investors. The government proved that defendant's scheme involved lying to first obtain investors funds. The evidence included that the defendant falsely represented to Tichfield and Schottenfeld, that he had five million dollar investor funds already under management, and that he actively traded those funds using his proprietary trading model when in fact he had only a simulated trading history. The defendant falsely represented to Tichfield that he had obtained significant positive returns of as much as 200 percent from trading actual investor funds since March 2009 in accounts at Trade Station and JP Morgan. The defendant falsely represented to Tichfield that he had active accounts at two established brokerage institutions, Trade Station and JP Morgan Chase, which would be used to trade Tichfield's funds when in fact he had no institutional accounts at these brokerage firms that could be used to trade Tichfield's funds. When Tichfield expressed concern that defendant's trading strategy would incur substantial commissions because it involved the frequent purchase and sale securities, defendant misrepresented that Trade Station gave him rebates for all the commissions and fees because he was a preferred client. If there are no questions on this issue, I'll move to the next issue. The next issue is the admission of the Trade Station tapes. The district court did not abuse its discretion in admitting the Trade Station tapes because the court correctly ruled the tapes were direct evidence of defendant's scheme. In furtherance of the defendant's scheme to obtain, trade, and retain Tichfield's funds, defendant lied to Trade Station to open the accounts and secure rebates by saying he was managing five million dollars for investors and accounts at when trading Tichfield's investments at Trade Station, that Schottenfeld had signed a contract to invest 50 million dollars with the defendant's hedge funds, that he wasn't under an order of prohibition, stating that the order was quote not an issue, I have nothing against me whatsoever. Defendant then misrepresented that if Trade Station agreed to open a new account despite their misgivings about the order of prohibition, defendant wouldn't trade any of the funds in the account because he had relinquished his control over the companies and the hedge fund. The tapes were also evidence of defendant's scheme in which he concealed from Tichfield the fact that Trade Station had rejected the application for an institutional account and the defendant's further concealment that he had ultimately used nominees to open the Trade Station account. There was something of an other acts argument raised in the defendant's opening brief in this case as a an argument against the tapes, the Trade Station tapes, and I did not see an other acts argument raised in the brief. It seems to me that that was probably waived or at the very least forfeited, but I don't recall that you argued forfeiture or waiver. Your Honor, the record I believe reflects that there was a motion in limine on the Trade Station tapes and in response to the motion in limine, I believe the defendant raised another acts argument Was there another acts argument? I'm not certain and but the issue wasn't raised at the time the tapes were admitted. The judge ruled on four or three grounds. That's correct, Your Honor. So far as I could tell. That's correct. And I took from that the understanding that a 404B argument wasn't litigated. Your Honor, the judge correctly ruled that the 404 analysis wasn't required because these weren't other acts, these were the acts. The defendant's statements to Trade Station were part and parcel with the scheme and not some other unrelated act, something separate from the scheme. Right, that's what you're arguing now, but it wasn't clear to me the extent to which the other acts argument was litigated in the district court, but you're telling me there was a motion in limine on this? There was a motion in limine on the on the trades, on the admission of the Trade Station tapes. But that was your motion? It was, yes. To admit it on other acts grounds? Motion in limine to admit it and the government addressed, argued that the evidence was not other acts evidence. It should be considered part of the scheme and in the alternative, in the event that the court's determined that it was other acts evidence, there was a 404 analysis in the government's motion in limine, but the judge ultimately decided that it was an other acts and did not need to engage in the 404B analysis. Okay, so this was litigated before trial on your motion? Yes. In an abundance of caution in the event that the court considered this other acts evidence? Exactly, the government wanted to address this just in the event that the court had any concerns. And the judge said it wasn't and then resolved the matter on 403 grounds. That's exactly right. Okay, thank you. If there are no further questions, Your Honor, the government would rest on these arguments and the arguments in the background. Before you sit down, you filed a supplemental about the tax returns? Oh yes, Your Honor. And those were admitted as part of the fraudulent scheme as well to demonstrate that the defendant wasn't investing his own money to wild success, is that right? That's correct, Your Honor. The government offered the tax returns as evidence regarding, you know, suggesting that the defendant was not in fact running a legitimate hedge fund business. The government's evidence regarding the defendant's tax returns was limited to the FBI agent's testimony and it was to show that the defendant had not made, had not made legitimate tax deductions, business tax deductions that you would, and filed legitimate tax returns that you would file if you were the legitimate hedge fund manager that he purported to be. But it was a complete failure to file, right? Yes, Your Honor. That's the evidence that came in? Was that litigated on a motion in limine? It wasn't, Your Honor. The defendant did not object to the, there was no motion in limine filed and the defendant did not object at the time. Right, the issue is, I think, gone for purposes of this appeal for that reason, but the government, I assume, henceforward will be very cautious about introducing tax return evidence in fraud cases? Absolutely, Your Honor. Under circumstances like this, certainly in those cases that we brought to the court's attention were decided after this trial. Mr. Mitchell, before you sit down, I would appreciate your take on the last issue that is raised by the appellant. Could you give us a little background on how this came up? I found the presentation in the briefs, frankly, somewhat opaque. Yes, Your Honor. The district court did not err in not admitting defendants self-exculpatory statement to Trade Station. The defendant asserts in a vague fashion that the defendant said to someone at Trade Station that he did not manage other people's money. There's no citation to that and the, you know, he never presented to the court either a cite for the for the statement or anywhere in a transcript or a recording, so it's difficult to comprehensively argue against it, but the statement certainly wasn't preserved or cited to by the defendant. If such a statement existed, it would be hearsay in any event because it would have been offered to show that he had not, it would be a self-serving statement by the defendant to show that he, in contrast to what Tishfield said and what the defendant said to Trade Station in regard to him having millions of dollars in asset center management, it would have been something to the effect of I don't have any clients and I only have a simulated hedge fund. To the government's knowledge, there's no such statement in those tapes or in the transcripts and so it's unclear what exactly the defendant is arguing and tellingly, even in the reply brief, there is no citation to anything. What did the district court allow in the Wave District Court allowed the defendant to cross-examine the witness using the transcript of all of the tapes and when cross-examining the witness using that the defendant was allowed to ask the witness for his interpretation of the conversations with the defendant. What he was not allowed to do was to ask the witness to read into the record self-exculpatory, purportedly self-exculpatory statements by the defendant. If there are no further questions, we will rest on the arguments stated here and in our briefs. Thank you. Thank you, Mr. Mitchell. Mr. Greenberg. The first misnomer I want to correct since he just finished with that is these trade station tapes. When I went to cross-examine this witness, I was not allowed to ask him about what was said on the tapes. Statements like, Mr. Farooqui told you he'd never been in the hedge fund business. He told you he'd never taken other people's money in his life. And then I asked for a sidebar and I was denied a sidebar and I was told that the only way I could get those statements in was to put Mr. Farooqui on the stand. That's what the judge told me, that the defendant was going to have to testify in order to get in his statements that were part of the same conversation that the government had introduced. When there was a question earlier about the hedge fund and that it was a fictitious hedge fund, it was not a fictitious hedge fund. It was a legitimate hedge fund. The money was invested as the investor was promised. The algorithm did not work. The investor knew that this was Mr. Farooqui's first foray into the hedge fund business. He went out and he hired Foley and Lardner, a legitimate law firm. He didn't go hire some guy who was operating on a storefront somewhere. He hired a legitimate law firm. He got legitimate documents. He got all the disclaimers that Merrill Lynch would have gotten or anyone else who was starting a hedge fund. He gave these things to a man who managed four hundred million dollars on his own and the man looked at it and then when a question came up about the order of prohibition in Illinois, he sent him the order of everything. Did he do it perfectly? No. And I'm not trying to make a jury closing argument. What I'm saying is that they took out of thousands of documents. There was an SEC investigation. There was a civil suit this man filed. He lost two hundred thousand dollars. He's worth tens of millions of dollars. He came down like the wrath of God, Mr. Farooqui. There were boxes and boxes and boxes of documents and they kept focusing on one statement. One statement. There were hundreds of recorded phone calls. No false statement on the phone calls. Hundreds of other IMs. No false statement on the IMs. But one statement where he said five million SIM, five million real, a hundred and fifty, it makes no difference, everything's down. That was the only statement and the only witnesses that they could bring in that there was any fraud were the investor and his brother-in-law. They didn't bring in all the other people who were involved in this venture, nor did they signatory on the checking accounts. The money went into brokerage accounts. Checks were written. Money was transferred. He wasn't on any of those accounts. Other people were. Those people weren't indicted. Those people weren't brought in as witnesses. Nothing happened to those people. This man lost his money and got mad and I'm telling you brought the wrath of God down on this guy who was operating. And the guy knew it. He's operating from his basement in Aurora. That's where he was operating this, you know, hedge fund from. And all the material said there is no money. We are not trading anything. All of this other stuff, it can be smoke and that was the problem. And when they introduced the tax returns and I thought I'm reasonably certain we're gonna check the record that we did object to the tax returns. Maybe not at the moment in court but in a sidebar or at the beginning of the proceedings that day and we'll check the tax returns that he didn't file a tax return. So therefore he can't be successful. Lots of people don't don't file tax returns. Lots of people file false tax returns. And I'm just thinking, I don't, the Beanie Baby guy, he filed things with his tax returns. He's a legitimate businessman. I mean people do things or don't do things for all sorts of reasons. You didn't raise the tax return issue on appeal. I'm sorry. The tax return issue was not raised on appeal. Well, the government filed their supplemental materials yesterday about the tax returns. Right, but it's your burden to decide what issues you want to appeal. You can't bootstrap now. But it was raised that it didn't show anything. It was in the brief that it didn't show anything. That the evidence came in between the trade station tapes, the tax returns, and so forth. That it came in. It was not raised as a separate distinct issue. But it is argued that it proved nothing. There was a lot of, there's a lot of smoke here that proves nothing. And that's part of the problem is, what is the real evidence? That was the first question that was asked by Your Honor. What what is the real evidence of fraud in this case? And the only evidence that they really have of anything between the person who claimed they were defrauded and Mr. Farooqui is a conversations that were recorded but he doesn't have, or emails that he doesn't have, or so on and so forth. So I come back to what, you know, where was it? What is the evidence here? And I know that's an almost insurmountable burden, but we had someone who did everything he said, everything he said he was going to do, in fact panned out. The trade station tapes, we didn't get to get into the trade station. They cherry-picked statements and we weren't allowed to get into the other statements. But in fact, that doesn't make any difference anyway, the trade station. If he lied to trade station or not, that was to get lower commissions. That was to get lower commission. That wasn't to get somebody to invest. That had nothing to do with the scheme. If he said that McLeodry was going to audit the fund, there was no fund. So McLeodry, he had met with them so they didn't audit it. There was no fund to audit at that point. It was all this other stuff that was out there, and he's got all this going on, so he must have done something wrong to this poor investor. That was the case. Any other questions? Thank you. Thank you, Mr. Greenberg. Thanks to all counsel. The case is taken under advisement.